# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is made by and between Christopher McCormac ("McCormac") and Ark-La-Tex Financial Services, LLC ("Ark-La-Tex").

WHEREAS, McCormac was an employee of Ark-La-Tex from October 2011 through May 2014;

WHEREAS, McCormac was treated as a salaried exempt employee, not eligible for overtime, during some of his employment with Ark-La-Tex;

WHEREAS, on October 7, 2014, McCormac filed a Complaint, initiating an action lawsuit captioned <u>McCormac v. Ark-La-Tex Financial Services, LLC</u>, United States District Court for the Northern District of Georgia, Civil Action No. 1:14-cv-3218-RWS (the "Action"), in which he alleged that Ark-La-Tex violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*;

WHEREAS, Ark-La-Tex filed an Answer denying the pertinent allegations of McCormac's Complaint, and continues to deny those allegations;

WHEREAS, McCormac and Ark-La-Tex (collectively, "the Parties"), recognizing the risks and costs of litigation, have agreed to a final and binding settlement of the Action, as well as other matters covered by this Agreement; and

WHEREAS, the Parties agree that nothing in this Agreement shall be construed as an admission.

NOW, THEREFORE, in consideration of the recitals that are incorporated herein, and for the mutual consideration described below, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Joint Motion for Settlement Approval</u>. Upon the execution of this Agreement, the Parties will cooperate with each other to agree upon, and, by no later than November 17, 2014, file a Joint Motion for Settlement Approval ("Motion") with the Court. The Motion shall request enforcement of this Agreement and dismissal of the Action with prejudice, with each Party to bear his/its own attorney's fees and costs except as otherwise provided herein.

2. <u>Settlement Amount and Payment</u>. The maximum total consideration to be provided by Ark-La-Tex for this settlement, in full, final, and complete settlement of all claims that were or could have been asserted by McCormac, is Twelve Thousand and No/100 Cents ($12,000.00) ("the Settlement Amount"). The parties agree that the Settlement Amount reflects a compromise and is inclusive of all compensatory damages, liquidated damages, attorney's fees, and costs for the released claims set forth in Paragraph 4 below. The Settlement Amount is in exchange for and in consideration of all agreements contained herein, and is to be paid by separate checks made payable to McCormac and to McCormac's counsel, as follows:

   a. The sum of Six Thousand Seven Hundred Twenty Five and no/100 Dollars ($6,725.00) to McCormac, subject to customary tax withholding.

   b. The sum of Five Thousand Two Hundred Seventy Five and no/100 Dollars ($5,275.00) to Barrett & Farahany, LLP.

   c. Ark-La-Tex agrees that these two payments shall be delivered to McCormac's counsel within seven days of Court approval of this Agreement. In the event McCormac's counsel receives the payments before McCormac's right to revoke the Agreement under Paragraph 5 below has expired, McCormac's counsel shall hold the payments in escrow

until such expiration has occurred. If McCormac revokes the Agreement, McCormac's counsel shall return the payments.

3. <u>Material Alteration by Court.</u> Should the Court, in its ruling upon the Motion, alter in any material way the agreement reflected herein, either Party shall have a right to void this Agreement and continue to proceed with the Action.

4. <u>General Release.</u> Upon receipt of and in consideration for the payments referenced above in Paragraph 2, McCormac shall, except as expressly provided in Paragraph 5 below, release and forever discharge Ark-La-Tex and its directors, officers, employees, insurers, agents, attorneys, representatives, successors, assigns, and affiliates and parent, subsidiary and related corporations ("Released Parties") from any and all suits, debts, losses, causes of action, proceedings or demands of any kind whatsoever, whether at law or in equity, based on tort, contract, statute or otherwise, known or unknown, that McCormac has, had, or may have, or claim to have, own or hold against the Released Parties, upon or by reason of, arising out of, or in connection with his employment with Ark-La-Tex, whether made part of the Action or not. This release includes but is not limited to any claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; 42 U.S.C. § 1981; the Americans with Disabilities Act ("ADA"); the Family Medical Leave Act ("FMLA"); the Age Discrimination in Employment Act ("ADEA"); the Older Workers Benefit Protection Act ("OWBPA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Employee Retirement Income Security Act ("ERISA"); the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); applicable Georgia and Tennessee state employment law statutes; all laws relating to violation of public policy, retaliation, or interference with legal rights, including but not limited to retaliation or interference with the right to file or pursue a

claim for workers' compensation benefits; any and all other employment or discrimination laws; whistleblower claims; any tort, fraud, or constitutional claims; any claim for benefits; and any breach of contract or claims for promissory estoppel. McCormac further waives any right he may have to recover financial damages through any proceeding initiated by the EEOC or the U.S. Department of Labor against the Released Parties. It is agreed that this is a general release and is to be broadly construed as a release of all claims; provided that, notwithstanding the foregoing, this paragraph expressly does not include a release of any claims that cannot be released hereunder by law.

McCormac acknowledges that he subsequently may discover facts in addition to or different from those that he now knows or believes to be true with respect to his employment with Ark-La-Tex, and that he may have sustained or may yet sustain damages, costs, or expenses that are presently unknown and that relate to his employment with Ark-La-Tex. He acknowledges, however, that the Parties have negotiated, agreed upon, and entered into this Agreement in light of that situation. To the extent allowed by law, McCormac waives any and all rights that he may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to claims known or suspected as of the date of his execution of this Agreement.

McCormac further acknowledges that he has received from Ark-La-Tex all wages, benefits, and compensation, including vacation pay, which he is owed by Ark-La-Tex or to which he is entitled by law or Ark-La-Tex's policies as of his last pay period. McCormac further acknowledges that he has reported any and all workplace injuries that he incurred during his employment with Ark-La-Tex.

5. <u>McCormac's Unemployment Claim</u>. Upon approval of the settlement by the Court, Ark-La-Tex agrees to cease pursuing its challenge to McCormac's pending claim for unemployment benefits. Specifically, Ark-La-Tex will not appeal or otherwise challenge the award of unemployment benefits to McCormac.

6. <u>Opportunity for Review</u>. McCormac represents and acknowledges that he has carefully read and understands all of the provisions of this Agreement, and that he is voluntarily entering into this Agreement. Without limiting the scope of the General Release set forth in Paragraph 4 above, McCormac understands that by executing this Agreement, he is waiving all claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"). McCormac represents and acknowledges that he has been advised in writing to, and has been afforded the right and opportunity to, consult with an attorney and has, in fact, consulted with his attorneys prior to executing this Agreement; that he is entitled to take twenty-one (21) days to consider this Agreement; that he has seven (7) days following its execution within which to revoke this Agreement; and that this Agreement, and the payments due hereunder, will not become effective until after the revocation period has expired.

7. <u>No Admmission</u>. This Agreement does not constitute, and shall not be construed as or deemed to be, an admission of liability or wrongdoing on the part of any party, or as any proof of payment by Ark-La-Tex of a penalty or punitive or exemplary or liquidated damages, and none of the Parties will ever contend that it does constitute such an admission. This Agreement shall not be admissible in any proceeding as evidence of liability or wrongdoing by any party.

8. <u>Confidentiality</u>. This Agreement and all matters relating to the terms, negotiation, and implementation of this Agreement shall be confidential and are not to be

5

disclosed except by order of court or by agreement, in writing, of the Parties, but it may be disclosed: (i) to attorneys representing any of the Parties; (ii) to the Parties' respective bankers, bookkeepers, auditors, or accountants; (iii) to the Parties' insurers, insurance brokers, or prospective insurers; or (iv) as necessary to enforce this Agreement. The Parties may disclose the fact that the matter has settled without violating this Paragraph.

9. <u>Tax Consequences of Settlement</u>. The Parties understand and acknowledge that the allocation of the settlement as set forth in Paragraph 2 of this Agreement was agreed upon following arms-length negotiations, and was based upon the Parties' analyses of the claims, defenses and potential remedies involved. Except for the amounts withheld by Ark-La-Tex from the payment specified in Paragraph 2(a) of this Agreement, McCormac agrees that Ark-La-Tex is not liable for the payment of any tax assessed against McCormac in connection with this settlement. Rather McCormac agrees that any such tax shall be his sole responsibility. McCormac agrees that, in the event that any tax, penalty, or liability of any kind is assessed against or incurred by Ark-La-Tex by reason of the payments described in Paragraph 2, McCormac will fully and completely indemnify and hold harmless Ark-La-Tex for that portion of said tax, penalty, or liability that was his responsibility. Nothing contained herein shall be construed or relied upon as any advice or opinion by or on behalf of Ark-La-Tex regarding the tax treatment of the payments described in Paragraph 2 of this Agreement, and McCormac hereby expressly acknowledges that he will rely solely on his own accountants, attorneys, or advisors for such advice or opinion.

10. <u>Waiver of Reinstatement</u>. McCormac agrees that he will not hereafter be employed or reemployed by Ark-La-Tex, that he will not hereafter apply for or otherwise seek employment with Ark-La-Tex, and that he specifically waives any right to reinstatement

or consideration for reemployment in the future. Furthermore, the parties agree that this Agreement shall constitute a valid, non-discriminatory, non-retaliatory, and legitimate reason for Ark-La-Tex to not employ McCormac in the future or consider McCormac for future employment and for Ark-La-Tex to terminate the employment of McCormac should he become employed by Ark-La-Tex in violation of this Agreement.

11. Authority. Each signatory and party represents and warrants that he or she is authorized to sign this Agreement, and that they have the legal and binding authority to enter into this Agreement and to release all claims stated herein on behalf of all persons identified herein.

12. Severability. In the event that any provision of part thereof of this Agreement shall be held void or unenforceable, except Paragraphs 1 through 5 above, the remaining provisions hereof shall remain in full force and effect.

13. Voluntary Agreement. The Parties acknowledge that they have read this Agreement and that they understand and fully agree to each and every provision hereof; and that each of them has been represented by counsel in connection with entering into this Agreement.

14. Counterparts. It is understood and agreed that this Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed to be an original and all of such counterparts, taken together, shall constitute one and the same Agreement, even though all the parties hereto may not have executed the same counterpart of this Agreement.

15. Written Modification. This Agreement may not be modified or amended in any manner, except by written agreement signed by each party hereto.

16. <u>Plain Meaning</u>. This Agreement shall be construed in accordance with the plain meaning of its language and neither for nor against the drafting party.

17. <u>Controlling Law</u>. This Agreement shall be construed and enforced under the laws of the State of Georgia, notwithstanding Georgia's rules relating to choice of law or conflicts of laws.

18. <u>Headings</u>. Headings used in this Agreement are for convenience and are not to be interpreted as having any substance or effect.

19. <u>Entire Agreement</u>. This Agreement sets forth the entire and complete agreement by the Parties. No oral representation and no prior oral or written matters extrinsic to this Agreement shall have any force and effect as to the provisions of this Agreement. All prior and contemporaneous discussions, negotiations, and agreements between such parties with respect to the Agreement are superseded or are deemed merged into this Agreement.

IN WITNESS WHEREOF, the Parties have signed this Agreement on the dates indicated opposite their signatures, and the same shall become effective on the date of the last signature hereto, and having affixed their signatures hereto indicate their acceptance and understanding of the terms and conditions of this Agreement.

**Christopher McCormac**

Dated: November  18 , 2014      _/s/ Christopher McCormac_____

**Ark-La-Tex Financial Services, LLC**

Dated: November  19 , 2014      _____
                                 Brian McKinney, CFO.
                                 Its  Chief Financial Officer.